AMERICAN TRUST COMPANY· *v.* NASH.

Opinion delivered January 19, 1914.

1. TAXES—BOARD OF·EQUALIZATION—DUTY TO KEEP RECORD OF PROCEEDINGS.—Kirby's Digest, § 7005, providing that the clerk of the county court shall keep an accurate journal or record of the proceedings of the county board of equalization, is mandatory, and when such record is not kept, the proceedings of the board of equalization are without effect. (Page 100.)

2. LOST RECORD—PROOF OF.—The record of the proceedings of the board of equalization, required by Kirby's Digest, § 7005, to be kept, if lost, may be proved, as any other lost record or instrument is proved. (Page 100.)

Appeal from Craighead Chancery Court, Western District; *Basil Baker,* Special Chancellor; affirmed.

STATEMENT BY THE COURT.

The American Trust Company instituted this action in the chancery court against W. Y. Nash, as collector, and R. L. Collins, as county clerk of Craighead County, to enjoin the collection of taxes on personal property which it claimed were erroneously assessed against it.

Alex Berger, cashier of the American Trust Company, a banking corporation, testified: The capital of the plaintiff corporation is seventy-five thousand dollars, which is paid up, and its surplus is twenty thousand dollars. Real and personal property were assessed in 1911 in Craighead County on a basis of 40 per cent of the which is paid up, and its surplus is twenty thousand dol-9,200 acres of land belonging to H. D. Alfrey Land & Manufacturing Company, which was adjudged a bankrupt in February, 1911. The lands were conveyed to the plaintiff corporation by the trustee in bankruptcy on July 31, 1911. The lands were situated in Craighead County, and for 1911 were assessed for $48,120, and the taxes on them were paid by the plaintiff. The plaintiff's personal property was assessed at $39,435. I appeared before the board of equalization of Craighead County, and the members present at the meeting were W. E. Ward, A. E. Lockhart and John D. Walker. They re-

duced the assessment on the personal property of the plaintiff to $1,000, and arrived at this sum by assessing the property on a basis of 40 per cent of the capital, surplus and undivided profits of said company, and from that amount deducted the assessment on the real estate above referred to; and we compromised on a personalty assessment against the plaintiff corporation for $1,000.

A. E. Lockhart and W. E. Ward testified: The board of equalization of Craighead County for the year 1911 consisted of five members. The board was organized in the courthouse, but after its organization, conducted its meetings in the rooms of the Business Men's Club, in the city of Jonesboro. The cashier of the American Trust Company appeared at one of the meetings of the board held in the Business Men's Club, at which were present three members of the board, viz.: Walker, Ward and Lockhart. The members present had the real estate assessment before them, but did not have access to the record of assessments of personal property, it being at the time in the hands of the assessor at the courthouse, who was working on it. R. L. Collins was present at the organization of the board, but was not with them much after its organization. He would come in occasionally and ask if any notices were to be sent out to taxpayers, and that was about the extent of his attendance upon the meetings of the board. When the question of lowering the assessment on the personal property of the plaintiff corporation was presented to Walker, Ward and Lockhart, Walker objected to the reduction, but Ward and Lockhart stated they thought the reduction ought to be made, and Walker then said nothing further in regard to it. Ward and Lockhart agreed that a reduction to $1,000 should be made.

John D. Walker was a witness for the defendants, and testified: When the matter of reducing the assessment on the personal property of the plaintiff was presented to us, I said that I did not think it ought to be reduced. Ward and Lockhart thought it ought to be reduced. There was no vote taken, and no record was

made about the matter. Each one of us simply gave his opinion about it.

Ward testified, in addition, that he acted as secretary of the board at its meeting, and that it was the intention of the board to make a memorandum of its actions on all matters that came before it. That he recollects doing so in a general way, but has no distinct recollection that he did so in regard to the reduction of the personal assessment of the plaintiff.

Dan Jones, the assessor of the county, testified: The board adjourned before I completed my book of the taxes of personal property. The book was never before the board. I would have carried it to them had they asked me for it. They told me they did not have time to go into the equalization of personal assessments, and did not inform me that they had reduced the assessment on the personal property of the plaintiff. They never mentioned the matter to me at all.

R. L. Collins, county clerk of the county, testified: The board of equalization left with me a record purporting to be the proceedings of the board. It does not show that the board took any action whatever upon the assessment of personal property of the plaintiff corporation for the year 1911. I did not meet with the board all the time, and did not make any minute or record showing that the assessment of the plaintiff corporation had been reduced by the board. If the board reduced its assessment, no report of that fact was made to me.

The chancellor dismissed the complaint of the plaintiff for want of equity, and the case is here on appeal.

*Gordon Frierson* and *E. L. Westbrook,* for appellant.

1. A majority of the board, sitting in regular session, constituted a legal quorum, and had full power to act. 74 S. W. 390; 12 Fla. 653; 65 Md. 125; Dillon, Mun. Corp., § 278; 84 Md. 304; 7 Cow. (N. Y.) 402.

2. The failure of the board to record its decision does not affect the force or legality of such decision. 1 Heisk. (Tenn.) 720; 1 Wall. (U. S.) 627; 65 Am. Dec. 131; 22 S. E. 349.

By statute the board of equalization is given plenary power to adjust assessments. Act No. 249, Acts 1911, § 1. See also 90 Ark. 413; 84 Ark. 347.

*Hawthorne & Hawthorne,* for appellees.

The statute requires the clerk to keep an accurate journal of the proceedings of the board. Kirby's Dig., § 7005. The statute in this respect is mandatory. Oral evidence is not admissible to establish acts of the board of equalization; and if no record or journal is kept of the proceedings, they are a nullity. 35 Ark. 75; 66 Ark. 535; 47 N. W. 442; 65 Ala. 142; 30 Pac. 887.

HART, J., (after stating the facts). Section 7005, of Kirby's Digest, provides that the clerk of the county court shall keep an accurate journal or record of the proceedings of the county board of equalization. In the case of *French* v. *Edwards,* 13 Wall. (U. S.) 506, in discussing the distinction between mandatory and directory provisions of statutes, Mr. Justice Fields, speaking for the court, said:

"There are undoubtedly many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such generally are regulations designed to secure order, system, and dispatch in proceedings, and by a disregard of which the rights of parties interested can not be injuriously affected. Provisions of this character are not usually regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated. But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be, and generally would be, injuriously affected, they are not directory, but mandatory. They must be followed, or the acts done will be invalid. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise."

In the case of *Torry* v. *Millbury,* 41 Pick. (Mass.) 64, the court, in considering a statute regulating the assessment of taxes, recognized the rule laid down by the Supreme Court of the United States, and said that it is well settled that all provisions of a statute for the assessment of taxes which are intended for the security of the citizen and to enable him to know, with reasonable certainty, for what real and personal estate he is taxed are to be considered mandatory.

So it seems that what the law requires to be done for the protection of the taxpayer is mandatory, and can not be regarded as directory merely.

In 37 Cyc. 1107, it is said that if a statute requires the board of equalization to keep a record of its proceedings and enter thereon the action taken in particular cases, it is generally held mandatory, and a disregard of it fatal to the validity of its determination.

To the same effect, see *County of Hillsborough* v. *Londonberry,* 46 N. H. 11; *State Auditor* v. *Jackson County,* 65 Ala. 142.

There is no such thing as a parol assessment of taxes under our statute. The assessor is required to keep a list of both real and personal taxes and deliver the same to the county clerk. After the taxes have been equalized, the corrections are made on the books, and they are delivered to the collector, properly certified, and are his official order and warrant in writing directing him to collect the taxes. The records delivered to him are his only legal authority to collect the taxes until the taxes are abated and he is notified of that fact. Since the assessment of taxes in the first instance is a matter of record, so should any reduction or abatement of them by the board of equalization be a matter of record.

In the case of *Waters-Pierce Oil Co.* v. *Roberts,* 96 Ark. 92, it was held that the provision of our statute requiring the board of equalization to complete its work of equalizing valuations of property before the county court convened in October is mandatory, and that any action taken by the board after that date is void. This

shows the necessity of requiring the board to keep a record of its proceedings, for, after it is adjourned, can it be said that the various members of the board could give verbal directions to the assessor to reduce the taxes of any citizen, or can it be said that the members of the board could give verbal directions to the collector not to collect the taxes on the property of any citizen when the official warrant delivered to him commanded him to do so? We think not. The journal, or record, required by the statute to be kept by the county clerk is not only for evidence, but for the only evidence of the action taken. Of course, if this record should be lost or destroyed, it could be proved just as any other lost instrument or record is proved. To hold otherwise than we have held would be to place the assessment of property and the collection of taxes thereon in great confusion and uncertainty.

The decree will be affirmed.